(45 Misc. Rep. 86)

## PEOPLE v. ABEEL.

(Court of General Sessions, New York County. September, 1904.)

1. FORGING—WHAT CONSTITUTES—COMMON-LAW INDICTMENT.

An indictment alleged that defendant feloniously uttered a false and forged letter purporting to have been written by an officer of a corporation introducing defendant as a friend of the management of the corporation, and stating that favors shown him would be duly appreciated by it and the writer, and that the defendant knew said letter was false. *Held,* that the indictment could not be sustained at common law, as, though false, it could not be considered as a means by which another could be defrauded, or by which a pecuniary liability could be created.

2. SAME—STATUTORY CRIME.

An indictment alleging that defendant forged a letter of introduction whereby the opinions and rights of the person purporting to have signed the same were misrepresented was valid, under Pen. Code, § 514, subd. 3, providing that any person who shall utter a writing purporting to have been written or signed by another, which said writing the person uttering it knows to be false, forged, or counterfeited, and by the uttering of which the opinion, conduct, interests, or rights of the person purporting to have signed it shall be misrepresented or injuriously affected, shall be guilty of forgery, without an allegation that the person whose name was forged had been injured, or that defendant was guilty of an intent to defraud.

James N. Abeel was convicted of forgery. Motion in arrest of judgment. Denied.

Martin S. Lynch and Jesse Stearns, for the motion.

Wm. Travers Jerome, Dist. Atty. (William Rand, Jr., of counsel), for the People.

GOFF, R. On the 21st day of April, 1904, the defendant was, by verdict of a jury, convicted of forgery in the third degree, and, on being arraigned for judgment, moved in arrest thereof on various grounds.

A motion in arrest of judgment can be founded only on an objection to the jurisdiction of the court, or on the ground that the facts stated in the indictment do not constitute a crime. Cr. Code, §§ 331, 467; People v. Buddensieck, 103 N. Y. 496, 9 N. E. 44, 57 Am. Rep. 766; People v. Menken, 36 Hun, 99; People v. Kelly, 94 N. Y. 526. There being no question as to the jurisdiction of the court, the motion, therefore, will be considered only as resting upon the ground that the facts stated in the indictment do not constitute a crime.

In substance, the indictment alleges that the defendant did feloniously utter a certain false and forged letter purporting to have been written and signed by one John B. Van Every, the second vice president of the Western Union Telegraph Company, as follows:

"New York, October 31, 1903.

"To any employee: Western Union Telegraph Company.

"This will introduce Mr. J. O. Goelet, a personal friend of the management of this company. Any favors shown him will be duly appreciated by the corporation and myself. Very truly.

"J. B. Van Every, 2d Vice-President."

—Which said letter the defendant knew to be false, and by the uttering of which the sentiments, opinions, conduct, and rights of said John B. Van Every were misrepresented.

On this motion all of the essential allegations contained in the indictment must, by the verdict of the jury, be deemed proven; and, assuming them to be so proven, the question arises whether the acts of the defendant constitute the crime of forgery. If the general rule at common law, that to be the subject of forgery a writing must be false and in such form as to be the means of defrauding another, and which, if genuine, would operate as the foundation of another's liability, be applied to the writing set out in the indictment, it must manifestly be held that such writing is not the subject of forgery. Of these three essentials it contains but one, falsity, while from its language, either in parts or as a whole, it cannot be construed as a means by which another could be defrauded or by which a pecuniary liability could be created. There is at common law another essential of forgery, and that is the intent to defraud, but that is an attribute of the person who forges or utters, and is a question of fact, independent of the elements which the writing itself must contain. Therefore, since forgery, as defined at common law, cannot be predicated upon the writing made or uttered by the defendant, the conviction cannot be sustained unless, by recourse to statute law, authority be found which declares such writing to be forgery. If the statute in terms declares such writing to be a forgery, though devoid of some of the elements essential at common law, it is of little avail to either consider or cite authorities based on that system, or authorities from other jurisdictions where the law is not analogous to our own, and my attention has not been called to any case in any jurisdiction which has been decided under a statute similar or substantially so to the statute under which this indictment was drawn.

In order to correctly ascertain the meaning of the statute, it is necessary that it be examined in the light of the following rules: (a) That the legislative intent must be taken as expressed by the words which the Legislature has used; (b) that those words must be taken in their natural sense, and to intend what they mean; and (c) that, where such meaning is plain, there is no room for construction. Story, J., in Martin v. Hunter, 1 Wheat. 326, 4 L. Ed. 97; Bronson, J., in Waller v. Harris, 20 Wend. 555, 32 Am. Dec. 590; Forrest v. Forrest, 10 Barb. 46; Jones v. Harrison, 6 Exch. 328.

The Penal Code, while consisting of many hundreds of sections, is, so far as its object and purpose are concerned, to be construed as a single statute; and it was enacted for the purpose of embodying in a single statute the system of criminal law applicable to the state. People v. Jaehne, 4 N. Y. Cr. R. 478; Id., 103 N. Y. 193, 8 N. E. 374. One of its objects, as expressed in section 7, is to define the nature of the various crimes, and in section 3 it defines a crime to be an act or omission forbidden by law. In section 11 it is declared that:

"The rule that a penal statute is to be strictly construed does not apply to this Code or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law."

The old rule of strict construction of a penal statute, therefore, does not apply, and in any event the construction of a penal statute must not be so strict as to defeat its plain intent (State v. Main, 31 Conn. 572), but it must be so construed as fairly to suppress the mischief and advance the remedy (Parkinson v. State, 14 Md. 184, 74 Am. Dec. 522).

It must be borne in mind that the Code does not in general terms define forgery, while it does define other crimes, such as homicide, robbery, larceny, extortion, etc.; and, in order to ascertain what act or acts constitute forgery, the several sections which treat of the subject, and their subdivisions, must be examined; and from such an examination it is clearly apparent that all of the sections, and the subdivisions thereof, are not interdependent or governed by a general definition. Thus sections 509 and 511 severally declare that certain acts described and enumerated, when done with intent to defraud, shall constitute forgery. Section 510 declares that falsely certifying to an acknowledgment is forgery, but there is no mention of an intent to defraud. Section 514, in the first subdivision, declares that a person who falsifies or unlawfully and corruptly alters or destroys, etc., or (in the second) who, with intent to injure or defraud, shall falsely make any letter by which any person shall be injured in his good name or reputation, or (in the third) who shall utter any letter which he knows to be false, by which the sentiments of another person shall be misrepresented, or (in the fourth) who, with intent to defraud, shall forge a ticket of admission, etc., is guilty of forgery. Section 515 declares that a person who, with intent to defraud, or to conceal any larceny by any person, either alters or destroys an account, or makes a false entry, or willfully omits to make a true entry, is guilty of forgery. Section 516 declares that a person who, with intent to defraud, forges a railroad ticket, or who sells, or who with knowledge receives, is guilty of forgery. Section 517 declares a person who forges or counterfeits a stamp of the government, or who sells it with knowledge, is guilty of forgery. An analysis of those sections and their subdivisions shows that the essential of forgery is, in two sections and one subdivision of another, an intent to defraud; in another section, an intent to defraud or conceal; in another section, an intent to defraud or knowledge of the falsity; in one subdivision of another section, the doing of the act falsely or unlawfully or corruptly; in another subdivision of the same section, an intent to injure or defraud; in another subdivision of the same section, knowledge of the falsity; and in two different sections, the doing of the act without an intent to defraud. If all forgeries were predicated on an intent to defraud, may it not be correctly assumed that the Legislature would have grouped all of the things enumerated and made their criminality depend on an intent to defraud, as in larceny, for instance, where the criminality of all the acts prohibited is predicated on an intent to deprive or defraud? Evidently the Legislature did not intend such a general classification, for, while it describes a variety of acts as being subjects of forgery, it carefully discriminates in different sections and subdivisions those acts which depend for their criminality on what Sir James Fitzjames Stephens,

in Reg. v. Folson, 23 Q. B. Div. 168, calls the "mental element" of crime, from those acts which ipso facto constitute the crime. In other words, if a crime be fully defined, whatever satisfies that definition amounts to a crime. Can the power of the Legislature be questioned to declare an act, otherwise indifferent, criminal either with or without a particular intent? Thus the sale of liquor within prohibited hours is made a crime, without regard to any particular intent; so the false certification of an acknowledgment, or the counterfeiting of a postage stamp, is declared to be forgery, irrespective of any particular intent, and "intent" here is used in the sense of a necessary ingredient of the crime, which must be alleged and proved.

By chapter 53, p. 75, of the Laws of 1874 (since repealed and its sense incorporated in an amendment to the Penal Code), the Legislature declared a person who presented a forged letter of recommendation, and thereupon obtained employment, to be guilty of a misdemeanor, and such crime was not made to depend on an intent to injure or defraud.

In no act of the Legislature is the intent made more plain to differentiate acts which are declared forgeries, because of the different mental elements necessary to each, than in section 514 of the Penal Code, defining forgery in the third degree. In the first subdivision it is necessary that the acts described be done corruptly and unlawfully; in the second, that the acts be done with intent to injure or defraud; in the third, that the acts be done with knowledge of their falsity; and in the fourth, that the acts be done with intent to defraud. These subdivisions were inserted in the Code by different enactments. See 3 Laws 1881, p. 130, c. 676; Laws 1884, p. 462, c. 378; Laws 1892, p. 1417, c. 692. Each subdivision contains a complete summation of the acts which constitute the crime, and may therefore be considered as an independent statute. The disjunctive form of phraseology used throughout the section shows that forgery may be committed in any one of the various ways specified in the four subdivisions, each one of which is independent of the others and not in any way correlative. "Provisions in the alternative are common in legislation, and the rule is that whatever is within any one of the disjunctively connected clauses is within the statute." Bish. Writ. L. § 244. And from the inclusion of the terms which constitute the gravamen of the crime in one subdivision, and the exclusion of those same terms in defining the gravamen of the crime in another subdivision, it is clear that the Legislature intended that the different groups of acts in each subdivision should depend for their criminality upon different mental elements of crime, and not, as in sections 509 and 511, where all forgeries in the first and second degrees are made to depend upon the one mental element of crime, the intent to defraud. And it is also clear that the framers of those subdivisions had in mind the difference between the things objective, as applied to property, and the things subjective, as applied to personalty. Thus the acts enumerated in subdivisions 2 and 4 depend for their criminality on an intent to defraud—that is, to defraud some person of property— while the acts enumerated in subdivisions 1 and 3 depend for their criminality upon a mental element attributable to the person, and not

necessarily affecting property. The distinction between a prohibited act, the commission of which of itself constitutes the crime, and an act which depends for its criminality on an intent to defraud, was pointed out in People v. Wiman (Sup.) 32 N. Y. Supp. 1037. Subdivision 3, under which the indictment was drawn, reads:

"[A person] who shall alter [utter], or be a party to the uttering of any letter, * * * or other written communication, paper or instrument, purporting to have been written or signed by another person, * * * which said letter * * * or other written communication, paper or instrument * * * the person uttering the same shall know to be false, forged, or counterfeited; and by the uttering of which the sentiments, opinions, conduct, character, prospects, interests or rights of such other person shall be misrepresented, or otherwise injuriously affected"—is guilty of forgery in the third degree.

There are three component parts of the crime defined in this subdivision: (a) The uttering of a forged or false writing, (b) the knowledge of its falsity, and (c) the misrepresentation by the false writing of the sentiments, opinions, conduct, or rights of another person. The uttering of the false writing is a fact, the knowledge of its falsity is a fact, and the misrepresentation is a fact which may be inferred from the false writing itself. Did the writing in question misrepresent? The first clause of the letter, "This will introduce Mr. Goelet," misrepresented conduct; for conduct consists in behavior, action; and an introduction is an act. "A personal friend of the management of this company," misrepresented sentiment; for friendship is a feeling, an opinion, expressed by a sentiment. "Any favors shown him will be duly appreciated," misrepresented both sentiment and opinion; and "Very truly, J. B. Van Every," as a signature, misrepresented the right of Mr. Van Every to sign his name to his own letter. It is true that Mr. Van Every was not injured by any pecuniary loss; but a man may be injured in other ways than in his property interests. He may be injured in his feelings or reputation by a false assumption of his name and a misrepresentation of his opinion or conduct.

But it is not necessary that it should be either alleged or proved that he was injured; it is the misrepresentation which this subdivision of the law condemns. The sense of the statute is apparent and complete with the word "misrepresentation," and the disjunctive clause, "or otherwise injuriously affected," does not qualify or govern its meaning. If the terms used were ambiguous or obscure, and it became necessary to give effect to its true intent and meaning, the construction sought for would require the substitution of the word "and" for "or." But such is not the case; the clause is in the alternative; it means that if the opinions, conduct, rights, etc., be injuriously affected by other means, or in other respects, or from other causes than misrepresentation, an offense is committed the same as if committed by misrepresentation.

Taking the plain language of the subdivision in its ordinary sense and meaning, and bearing in mind the statutory enactment of the Code, its definition of crime (section 3), its objects (section 7), its rule of construction (section 11), there is no difficulty in its construction, or in ascertaining and giving full effect to the intent of the Legislature. And, if there be any difficulty, it can arise only from the confusion con-

sequent upon an endeavor to reconcile the statute with the formulæ of the text-books and the decisions and dicta of judges upon questions of forgery under statutes wholly dissimilar. As an illustration of the latter, Waterman v. People, 67 Ill. 91, is urged as parallel and in principle controlling. In that case the defendant was convicted of forgery for having uttered a false letter of introduction promising to reciprocate for favors shown. The Supreme Court reversed the conviction, holding that the letter, if genuine, could not affect legal rights, and was therefore not a subject of forgery. But the statute under which Waterman was indicted made the gravamen of forgery an intent to damage or defraud by a false writing purporting to create or diminish a pecuniary demand or obligation. See Cr. Code, § 105; Hurd's Rev. St. Ill., 1874, p. 367. In California it has been held that under the Code it is not necessary that the writing, if genuine, should be the basis of a legal liability (People v. Munroe, 100 Cal. 664, 35 Pac. 326, 24 L. R. A. 33, 38 Am. St. Rep. 333); in Pennsylvania, that under a statute declaring it forgery to utter a false diploma it was not necessary to allege or prove an intent to defraud (McClure v. Com., 86 Pa. 353); and in England, that it is forgery to utter a false letter for the purpose of procuring a situation (Reg. v. Sharman, Dears. C. C. 285), or to obtain a berth as seaman (Reg. v. Forback, 4 Cox, C. C. 38), or to procure an appointment as constable (Reg. v. Moah, 7 V. Cox, C. C. 503).

When the Legislature declares an act to be a crime, and, in defining the act, makes use of words to convey its meaning and intent which in their ordinary sense are plain and unequivocal, a court is bound to give full force and effect to such meaning and intent, and to reject a construction which requires the use of words not in the statute, and an interpretation which would defeat the plainly expressed will of the Legislature. The question is not that the Legislature should have used certain terms in order to conform to certain preconceived notions as to what constituted forgery, but has it, in the precise language used, defined as forgery the acts alleged in this indictment and proven upon trial? In my opinion it has, and the motion is therefore denied.

Motion denied.